No. 24-5692

IN THE

# UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

---

**CHASOM BROWN; MARIA NGUYEN; WILLIAM BYATT**
*Plaintiffs--Appellees,*

*v.*

**GOOGLE LLC**
*Defendant—Appellee*

*v.*

**ADAM SALCIDO**
*Movant—Appellant*

---

UNITED STATES DISTRICT COURT OF THE NORTHERN DISTRICT OF
CALIFORNIA,
CASE NO. 4:20-CV-03664 YGR
YVONNE GONZALEZ ROGERS, JUDGE

---

# OPENING BRIEF

---

POTTER HANDY, LLP
Russell Handy, Esq., SBN 195058
100 Pine Street, Ste 1250
San Francisco, California 94111
Phone (858) 375-7385
Fax (888) 422-5191
Attorneys for Movant-Appellant

# TABLE OF CONTENTS

I.      Statement of Jurisdiction ........................................................ 1

II.     Issues Presented for Review .................................................. 2

    A.    Timeliness. ................................................................... 2

    B.    Impairment of Rights. .................................................. 2

III.    Statement of the Case .......................................................... 3

    A.    The Claims of the Lawsuit Against Google: ................. 3

    B.    Class Counsel did yeoman's work in uncovering Google's
          deceptive practices and advancing this litigation. ..................... 6

    C.    The district court certifies a Rule 23(b)(2) class for
          injunctive relief but denies certification for a Rule
          23(b)(3) damages class. The Class Representatives seek
          interlocutory review. ................................................................. 6

    D.    The Class Representatives strike a sweetheart deal to settle
          their own damages claims, while abandoning the right to
          appeal the damages class ruling. No notice is provided to
          the Class. Class Counsel works out a confidential tolling
          agreement for its clients on the side.......................................... 11

    E.    The Motion to Intervene and the Motion for Leave to Seek
          Reconsideration.......................................................................... 15

    F.    Intervenors file this appeal and the district court stays the
          case.............................................................................................. 16

IV.     Summary of argument ...................................................... 17

V.      Standard of Review ......................................................... 20

VI.     The district court's denial of the motion to intervene should be

reversed. ........................................................................................ 21

VII. Given that the purpose of the Motion to Intervene was to preserve the right to appeal the denial of the damages class, the Supreme Court's decision in *United v. McDonald* demonstrates that the motion was timely. ............................................................... 22

VIII. Given the dramatic change in circumstances, i.e., the sudden abandonment of the damages class issue, the district court abused its discretion by finding the motion to intervene untimely. The case of *Smith v. Los Angeles Unified School District* nicely lays out the standards. ................................................. 30

IX. This Court's holding in *Kalbers* is instructive as it highlights that any prejudice identified by the court must be tied to the delay in seeking intervention. Here, there was no prejudice that took place due to any delay by Intervenors ...................................... 37

X. The three-month delay from the time that the proposed settlement agreement was announced to the time the motion to intervene was filed was reasonable under the circumstances. .......... 40

XI. It is unfathomable that the district court could hold that absent intervention, there was not even a possibility, even "as a practical matter," that it would "impair or impede the movant's ability to protect its interest." ............................................................ 42

   A. An underlying reason for the district court's ruling on the motion to intervene was its belief that Google had a viable consent defense. ............................................................ 46

   B. The *Calhoun* decision establishes that Google has no viable consent defense, because consent is measured solely from the lay meaning of Google's disclosures. .............. 48

XII. Conclusion .................................................................................... 51

STATEMENT OF RELATED CASES .................................................... 52

CERTIFICATE OF COMPLIANCE ........................................................ 53

# TABLE OF AUTHORITIES

**Cases**

*American Pipe and Constr. Co. v. Utah,*
    414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)......................... 44

*Calhoun v. Google, LLC.,*
    113 F.4th 1141 (9th Cir. 2024) ...................................... 15, 48, 49, 50

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
    647 F.3d 893 (9th Cir. 2011) ......................................................... 1, 46

*City of Emeryville v. Robinson,*
    621 F.3d 1251, (9th Cir. 2010) ......................................................... 20

*Cooper v. Newsom,*
    13 F.4th 857 (9th Cir. 2021) ............................................................. 20

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,*
    445 U.S. 326, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980).................. 10

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) ............................................................. 7

*Kalbers v. United States Dep't of Just.,*
    22 F.4th 816 (9th Cir. 2021) ........................................... 18, 29, 38, 39

*Koon v. United States,*
    518 U.S. 81, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996).................. 21

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)..................... 44

*San Pedro Hotel Co. v. City of Los Angeles,*
    159 F.3d 470 (9th Cir. 1998) ........................................................... 21

*Smith v. Los Angeles Unified Sch. Dist.*,
   830 F.3d 843 (9th Cir. 2016) ....................................................... passim

*U.S. ex rel. McGough v. Covington Techs. Co.*,
   967 F.2d 1391, (9th Cir. 1992) .................................................... 19, 28

*United Airlines, Inc. v. McDonald*,
   432 U.S. 385, 97 S. Ct. 2464, 53 L. Ed. 2d 423 (1977)............. passim

*United States v. City of Los Angeles, Cal.*,
   288 F.3d 391 (9th Cir. 2002) ............................................................ 45

*United States v. State of Or.*,
   745 F.2d 550 (9th Cir. 1984) ................................................ 18, 35, 39

*Westlands Water Dist. v. United States*,
   700 F.2d 561 (9th Cir. 1983) ............................................................ 22


**Statutes**
18 U.S.C. § 2510.......................................................................................... 1
28 U.S.C. § 1331.......................................................................................... 1
28 U.S.C. § 1367.......................................................................................... 1
California Penal Code § 637.2.................................................................. 12


**Other Authorities**
Richard L. Marcus & Edward F. Sherman,
   Complex Litigation 233 (1985) ...................................................... 44


**Rules**
Fed. R. Civ. P. 23(b)(2) .............................................................................. 7
Fed. R. Civ. P. 23(b)(3) .............................................................................. 8
Fed. R. Civ. P. 24(a) ................................................................... 17, 21, 43

## I.     Statement of Jurisdiction

On June 2, 2020, a Class Action Complaint was filed against Google in the United States District Court for the Northern District of California.[1] Almost three years later, after several amendments and a lot of litigation, a Fourth Amended Class Action Complaint (the current pleading) was filed with five named plaintiffs: Chasom Brown,  William Byatt, Jeremy Davis, Christopher Castillo, and Monique Trujillo ("Class Representatives").[2] The federal court had original jurisdiction over the Federal Wiretap Act claim[3] and supplemental jurisdiction over the additional California claims.[4] This appeal is from the district court's order denying a motion to intervene brought by 185 plaintiffs ("Intervenors"), issued on August 12, 2024.[5] Less than 30 days later, after the denial of the motion, this appeal was timely filed.[6] The denial of a motion to intervene as of right is a final, appealable order over which this Court has jurisdiction.[7]

---

[1] 3-ER-430, entry 1.
[2] 3-ER-283.
[3] 18 U.S.C. § 2510.
[4] 28 U.S.C. § 1367.
[5] 1-ER-2.
[6] 2-ER-423.
[7] *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 896 (9th Cir. 2011).

## II.    Issues Presented for Review

### A.    Timeliness.

Under Rule 24, a motion to intervene must be timely. Did the district court abuse its discretion when it found an intervention motion untimely, although intervention sought merely to preserve the right to appeal after final judgment, was filed *before* final judgment, caused no prejudice to the parties, and the Supreme Court has repeatedly held that such intervention motions are timely so long as they are filed before expiration of the appeal window?

### B.    Impairment of Rights.

Under Rule 24, intervention is mandated where the disposition of the action may as a practical matter impair or impede the intervenors' ability to protect their interest. Given that the Intervenors—members of a putative damages class—had an interest in preserving the right to appeal the denial that damages class and the Class Representatives were abandoning that very right, should Intervenors have been permitted to intervene?

### III.    Statement of the Case

#### A. The Claims of the Lawsuit Against Google:

Google covertly intercepted and collected personal and sensitive user data while users were in a "private browsing mode," without the disclosure or consent of the users and for which Google reaped billions of dollars in profits each year.[8]

Since June 1, 2016 (the class period), Google has claimed that users can simply set their browser software to "private browsing mode," so that they can limit what data Google tracks, collects, and shares with third parties.[9]  Based on Google's representations, Plaintiffs and Class members reasonably believed that their data would not be collected by Google and that Google would not intercept their communications when they were in "private browsing mode."[10]

Google's representations were false because Google unlawfully intercepted users' private browsing communications to collect personal and sensitive information concerning millions of Americans, without disclosure

_____

[8] 3-ER-279, ¶ 1.
[9] 3-ER-279, ¶ 2.
[10] 3-ER-279, ¶ 3.

or consent.[11] Google intercepted and collected this data by causing the user's web browsing software to run Google software scripts (bits of code) that replicate and send the data to Google servers in California, even if the user was not engaged with any Google site or functionality and even when the user was in a private browsing mode.[12] These Google software scripts give no notice to the user of Google's data collection methods.[13]

More than 70% of all online websites use one or more of Google's services.[14] Hidden Google software "scripts" cause the user's device to send detailed, personal information to Google's servers, including the private browsing communications between the user and the website.[15] This includes the contents of the webpage being requested and the URL viewed.[16]

Google's practices infringe upon users' privacy; intentionally deceive consumers; give Google and its employees power to learn intimate details about individuals' lives, interests, and internet usage; and make

---

[11] 3-ER-279, ¶ 4.

[12] 3-ER-279, ¶ 5.

[13] 3-ER-279-280, ¶ 5.

[14] 3-ER-280, ¶ 8.

[15] 3-ER-280, ¶ 8.

[16] 3-ER-280, ¶ 8.

Google "one stop shopping" for any private, government, or criminal actor who wants to undermine individuals' privacy, security, and freedom.[17] Through its pervasive data tracking business, Google knows who your friends are, what your hobbies are, what you like to eat, what movies you watch, where and when you like to shop, what your favorite vacation destinations are, what your favorite color is and even the most intimate and potentially embarrassing things you browse on the internet—regardless of whether you follow Google's advice to keep your activities "private."[18]

Notwithstanding consumers' best efforts to keep their activities on the internet private, Google has made itself an unaccountable trove of information so detailed and expansive that author George Orwell could never have dreamed it.[19]

---

[17] 3-ER-280, ¶ 9.
[18] 3-ER-280, ¶ 10.
[19] 3-ER-280-281, ¶ 10.

**B.  Class Counsel did yeoman's work in uncovering Google's deceptive practices and advancing this litigation.**

Over the course of almost four years, Class Counsel successfully navigated numerous pleading challenges, scores of discovery battles, and Google's motion for summary judgment.[20] As fairly framed in the motion for approval of the class settlement, "This case required years of 'herculean' efforts (the word used by Google's counsel), including 34 motions to compel, over 5.8 million pages of documents produced by Google, a year-long technical special master process, two sanctions proceedings with both finding discovery misconduct by Google, and many months of hard-fought mediation."[21]

**C.  The district court certifies a Rule 23(b)(2) class for injunctive relief but denies certification for a Rule 23(b)(3) damages class. The Class Representatives seek interlocutory review.**

On June 21, 2022, the Class Representatives filed a Motion for Class Certification.[22] In analyzing the arguments and evidence, the court found that the threshold requirements of numerosity, commonality, typicality, and

---

[20] 3-ER-434-507 (generally).
[21] 3-ER-233, lines 8-11.
[22] 3-ER-478, entry 609.

adequacy of representation under Rule 23(a) of the Federal Rules of Civil Procedure were met.[23] The Court then turned to the requested class certifications.

The Class Representatives sought to certify the same classes of individuals under both Rule 23(b)(2) for injunctive relief and 23(b)(3) for damages.[24]

Under Rule 23(b)(2), a court can certify a class where the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[25] Certification under 23(b)(2) is appropriate where the primary relief sought is declaratory or injunctive.[26] Here, the district court found that the Class Representatives had sufficiently identified the specific course of conduct that they sought to enjoin, and established that this course of conduct applied to the entire proposed class, and that certification was

---

[23] 3-ER-373-376.
[24] 3-ER-372-373.
[25] Fed. R. Civ. P. 23(b)(2).
[26] *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011).

appropriate.[27]

Rule 23(b)(3)—a damages class—however, requires a different analysis. Rule 23(b)(3) requires the court to determine whether "questions of law or fact common to class members predominate over any questions affecting only individual members."[28] After an analysis of the governing law and the arguments made by the parties, the district court found that the affirmative defense of implied consent raised individualized issues that defeated predominance.[29] The district court found that "if the class was certified, the jury would be tasked with filtering out what members consented to the alleged conduct, and how" and that this issue would "drive the litigation," and thus "predominate over any common issues."[30]

The court denied the motion to certify a damages class under Rule 23(b)(3).[31] This was a devastating ruling to the Class as the estimated damages (per expert testimony) ranged from $3.87 billion (under an unjust

---

[27] 3-ER-382-383.
[28] Fed. R. Civ. P. 23(b)(3).
[29] 3-ER-381, lines 3-4.
[30] 3-ER-381, lines 11-19.
[31] 3-ER-381, lines 19-20.

enrichment model)[32] to $9.1 billion (under a restitution model).[33] While this may be little more than a rounding error to a company whose parent company has a market capitalization of about $2.4 trillion,[34] this  was a staggering blow to the Class.

The Class Representatives promptly petitioned the Ninth Circuit for permission to take an immediate interlocutory appeal under Rule 23(f) of the Federal Rules of Civil Procedure.[35] They argued that the district court's ruling, focusing on implied consent rather than explicit consent, was "manifestly erroneous," and warranted immediate review.[36]

Google opposed the petition, arguing that "Rather than conduct serial interlocutory reviews, the Court should deny Plaintiffs' Petition and address all of the parties' respective challenges after final judgment."[37] Google's position was that "The more efficient approach—particularly here, where the case is proceeding as a class action on all claims—is to

_____

[32] 3-ER-354, lines 26-27.
[33] 3-ER-355, lines 14-15.
[34] https://stockanalysis.com/stocks/googl/market-cap/
[35] Request for Judicial Notice ("RJN"), p. 3.
[36] RJN-7.
[37] RJN-34.

resolve any appeal of class certification issues after final judgment."[38]

In its Reply, the Class Representatives also pointed out the practical

result of not permitting this case to continue with a damages class:

> While the Rule 23(b)(2) classes will enable Plaintiffs "to test
> each of their liability theories", the Order sounds the "death
> knell" for many individual users' damages claims. Many of
> the (at least) "tens of millions" of users whom even Google
> concedes did not impliedly consent will probably never seek
> monetary relief for Google's breach of contract. This case has
> been extremely expensive to litigate, with the parties
> navigating a complex data process before a Special Master,
> and Plaintiffs overcoming Google's discovery misconduct,
> which resulted in sanctions. Most users do not have the means
> to overcome those barriers.
> [RJN-66.]

Ultimately, this Court denied the petition for interlocutory review.[39]

Nonetheless, it was not the end of the issue. As the Supreme Court

has long held, the denial of a damages class is "an example of a procedural

ruling, collateral to the merits of a litigation, that is appealable after the

entry of final judgment."[40] And given the Class Representatives' vigorous

handling of this issue—and their ardently-stated understanding of the

_____

[38] RJN-50.

[39] RJN-74

[40] *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 336,
100 S. Ct. 1166, 1173, 63 L. Ed. 2d 427 (1980) (emphasis added).

importance of pursuing damages as a class—the absent class members had no reason to worry that their interests were not being satisfactorily protected.

> **D.    The Class Representatives strike a sweetheart deal to settle their own damages claims, while abandoning the right to appeal the damages class ruling. No notice is provided to the Class. Class Counsel works out a confidential tolling agreement for its clients on the side.**

Notwithstanding the fact that the Class Representatives stridently informed this Court that the lack of a damages class would "sound the death knell" for millions of absent class members who do not have the means to pursue damages on an individual basis,[41] the Class Representatives decided to abandon pursuing a damages class. On April 1, 2024, the Class Representatives filed a Class Action Settlement Agreement.[42]

In that Settlement Agreement, the Class Representatives work out a sweetheart deal for their own individual damages claims: they would submit their individual claims for monetary relief, "including statutory

---

[41] RJN-66.
[42] 3-ER-259.

penalties, damages, unjust enrichment, disgorgement, restitution, punitive

damages or any other monetary claim" to binding and confidential

arbitration, where the arbitration relieves them of any duty to prove liability

and "will determine only the amount of monetary relief to be awarded" to

those Class Representatives,[43] with their monetary award to take place

within ninety days of the end of the present case.

Given that one of the causes of action in the complaint, i.e., the

California Invasion of Privacy Act (CIPA) claim, provides for stackable

statutory damages of $5,000 "per violation,"[44] the opportunity to avoid

having to prove liability and move directly to demonstrating to an arbitrator

merely how many violations there were, i.e., how many times the person

used "private browsing mode," is a staggering prize for the Class

Representatives. In exchange for this opportunity, the Class

Representatives waived their right to appeal the denial of the damages

class.[45] The settlement did not similarly benefit any absent class members

as it expressly disavowed any admission of liability and could not be

_____

[43] 3-ER-264 (sections II-8, II-9).
[44] California Penal Code § 637.2.
[45] 3-ER-262 (Individual Claims).

12

"construed or used in any manner as an admission of liability or evidence of either Party's fault, liability, or wrongdoing."[46]

The Settlement Agreement notes that none of the absent class members released any damages claims or waived any right to appeal the denial of the damages class.[47] As a practical matter, however, that means an absent class member would need to intervene to have standing to appeal the denial of the damages class. And that presented a tight window because the Settlement Agreement agreed that there would be no notice to the Class[48] (and none was given), and no motion for preliminary approval of the Settlement Agreement,[49] but that the parties would proceed expeditiously to final approval, upon which the case would be dismissed with prejudice.[50]

Given that the Class Representatives were abandoning any effort to appeal the denial of a damages class, this meant that the tolling of the statute of limitations arguably ended sixteen months prior to when the

---

[46] 3-ER-287 (section 1).
[47] 3-ER-262 (Released Class Claims).
[48] 3-ER-263 (section 4).
[49] 3-ER-263 (section 5).
[50] 3-ER-263 (section 5).

certification of a damages class was denied. Class Counsel, understanding the issue, worked out a confidential tolling agreement for its own clients, aside from any proceedings in this case.[51]

The Intervenors did not know anything about this tolling agreement. The sole reference to it was neatly tucked away on page 48, in paragraph 179 of Exhibit 11 to the Declaration of Mark Mao in support of the Motion for Final Approval of Class Action Settlement.[52] But no details were provided. It was unclear who it covered and for what time period and what, exactly, was in that agreement. The Intervenors, therefore, sought a copy to determine the true impact of the Class Representatives abandoning their advocacy regarding the damages class. As the emails demonstrate, Class Counsel refused to provide a copy on the basis that it was confidential or irrelevant,[53] only providing it after the Motion to Intervene was filed. Once it was received, the Intervenors confirmed that it did not help the absent class members and their interests were fully in jeopardy.

---

[51] 2-ER-136.
[52] 2-ER-168, ¶ 6.
[53] 2-ER-160-166.

### E. The Motion to Intervene and the Motion for Leave to Seek Reconsideration.

On July 2, 2024, well before the hearing was scheduled for the motion to approve the Settlement Agreement, Intervenors filed a Motion to Intervene.[54] An express purpose of the intervention motion was to protect their appellate rights.[55]

The district court denied the Motion to Intervene on two bases: (1) that the motion was not timely and (2) that seeking to preserve the ability to appeal the denial of the damages class was an insufficient reason.[56]

Eight days after the court's ruling, this Court issued its decision in *Calhoun v. Google, LLC.*, 113 F.4th 1141 (9th Cir. 2024). In *Calhoun*, a companion case, this Court overturned the same judge, i.e., Judge Yvonne Gonzalez Rogers, issuing a ruling that narrowed the scope of the consent defense that had previously persuaded Judge Rogers to deny the damages class.[57] The Intervenors promptly brought a Motion for Leave to File a Motion for Reconsideration, arguing that: "In light of the Ninth Circuit's

---

[54] 2-ER-170.
[55] 2-ER-172, line 17 – 2-ER-173, line 1.
[56] 1-ER-3, lines 10-23.
[57] *Calhoun*, 113 F.4th at 1147-1151.

decision, millions of incognito-mode users will have the opportunity to recover billions of dollars in damages from Google as a class — as long as their named representatives do not give that right away."[58]

The district court denied the Motion for Leave to File Motion for Reconsideration, noting that it was not convinced that *Calhoun* demanded reconsideration, and that the court had concerns that the "motion makes no attempt to argue plaintiffs' current counsel is inadequate or to justify movants' failure to attempt intervention in the nearly two years following class certification before the eve of settlement."[59]

### F.  Intervenors file this appeal and the district court stays the case.

On September 10, 2024, the Intervenors filed an appeal of the denial of the Motion to Intervene.[60] The district court then granted Google's motion to stay the case, finding that it was divested of jurisdiction to move forward.[61] As the district court reasoned, "The [Intervenors] identify in their motion several aspects of the proposed settlement that they feel treat

---

[58] 2-ER-14, lines 24-26.
[59] 2-ER-11.
[60] 2-ER-423.
[61] 2-ER-6.

named class members preferentially."[62]

## IV.  Summary of argument

The district court abused its discretion when denying the Motion to Intervene as untimely. Under Rule 24, a motion to intervene must be timely.[63] But there are no hard and fast deadlines and, thus, the question of timeliness is somewhat nebulous. Timeliness is determined by the "totality of the circumstances" test, with a focus on three primary factors: (1) the stage of the proceeding; (2) the prejudice to other parties; and (3) the reason for and length of the delay.[64]

When focusing on the stage of the proceedings, "the crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties."[65]

Thus, it is not the length of time that a lawsuit has been litigated by

---

[62] 2-ER-8, lines 12-16.
[63] Fed. R. Civ. P. 24(a).
[64] *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016).
[65] *Id.*

which timeliness is measured, but by when intervenors needed to intervene to protect their interests. So, for example, this Court found a motion for intervention was timely when brought twenty years after litigation commenced but filed a little more than two months after discovery of changed circumstances.[66] Likewise, this Court found that a motion to intervene was timely when filed sixteen years after litigation began but filed within eight months of the changed circumstances prompting intervention.[67]

Additionally, once the proper timing window is framed, the most important factor underlying timeliness is whether the delay caused any legal prejudice to the other parties.[68] This Court holds that there is a balancing test: we neither want "hasty" or premature intervention, nor do we want tardy intervention that causes prejudice.[69]

Thus, for example, the Supreme Court has repeatedly held that when the purpose of intervention is to protect the right to appeal an issue—such as where the existing parties do not plan on pursuing an appeal—there is no

---

[66] *Smith*, 830 F.3d at 853-854.
[67] *United States v. State of Or.*, 745 F.2d 550, 551–52 (9th Cir. 1984).
[68] *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 823 (9th Cir. 2021).
[69] *Id.*

reason to intervene in the case before final judgment (in fact, it would be wasteful) and that intervention is timely if sought after judgment but before the expiration of the right to file a notice of appeal.[70]

In the present case, the Intervenors sought to intervene only after the Class Representatives announced that they were no longer going to pursue an appeal of the denial of the damages class. Intervenors seek to prosecute that appeal themselves. And they brought the motion three months after this change in representation was announced, but well before any final judgment. Thus, the district court's holding that the intervention was untimely because it was four years into litigation, and more than a year after the court denied the damages class, and on the "eve" of final judgment is both nonsensical and flies in the face of established law about the timing of such interventions. It is an abuse of discretion.

The district court also denied the motion to intervene because the Intervenors had no interests that could possibly be impaired by proceeding to final judgment and that any such interests were adequately represented

---

[70] *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 387 & 394, fn. 15, 97 S. Ct. 2464, 2466, 53 L. Ed. 2d 423 (1977); *U.S. ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1395–96 (9th Cir. 1992).

already by the Class Representatives. This determination is reviewed de novo. And it makes no sense. The Intervenors (all putative members of the 23(b)(3) damages class) have a significant interest in appealing the denial of the damages class. Absent intervention, no one is in a position to appeal that certification denial. The Class Representatives expressly waive their right to appeal that issue as part of the Settlement Agreement. The district court's holding makes no sense here.

## V.      Standard of Review

This Court "review[s] a district court's decision allowing intervention as of right pursuant to Rule 24(a) *de novo*, except for the element of timeliness, which [is reviewed] for an abuse of discretion."[71]

This Court has "jurisdiction over a district court's denial of permissive intervention only if [it concludes] the district court abused its discretion."[72] In reaching its decision, "Any element of legal analysis and statutory interpretations which figure in the district court's decision are also

---

[71] *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010).
[72] *Cooper v. Newsom*, 13 F.4th 857, 868 (9th Cir. 2021) (citations omitted).

reviewed de novo."[73] Moreover, whether or not a factor "is a permissible basis" for exercising discretion "is a question of law" entitled to de novo review.[74]

## VI. The district court's denial of the motion to intervene should be reversed.

Under Rule 24, the court "must" permit anyone to intervene if the motion is timely, and the intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[75]

Here, the district court denied the motion, finding that (1) it was not timely, (2) that the Intervenors' interests would not be impaired or impeded absent intervention and (3) that the Class Counsel was adequately

---

[73] *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 479 (9th Cir. 1998).

[74] *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 2047–48, 135 L. Ed. 2d 392 (1996).

[75] Fed. R. Civ. P. 24(a).

representing that interest.[76] The Intervenors will discuss all three issues—timeliness, impairment, and adequacy of representation—in order. A careful consideration of the record and the law demonstrates that the district court got it wrong.

The directives of this Court are that "the requirements of Rule 24(a) are to be construed in favor of the applicant for intervention,"[77] but the district court did not follow that mandate in its cramped and unfair construction of the facts and the application of law to the record.

**VII.** **Given that the purpose of the Motion to Intervene was to preserve the right to appeal the denial of the damages class, the Supreme Court's decision in *United v. McDonald* demonstrates that the motion was timely.**

In *McDonald*, United Airlines had a rule for its employees—that 50 years later seems quite shocking—that its female stewardesses had to remain unmarried as a condition of employment while its male stewards had no such restriction.[78]

Carole Romasanta, a stewardess, fired because of her marriage, sued

---

[76] 1-ER-3.

[77] *Westlands Water Dist. v. United States*, 700 F.2d 561, 563 (9th Cir. 1983).

[78] *McDonald*, 432 U.S. at 387.

United as a class action on behalf of herself and all other United stewardesses fired because of the no-marriage rule.[79] The district court determined that the class should only properly consist of stewardesses who not only were fired but had also filed charges.[80] Because this only numbered around thirty stewardesses, the court found it did not satisfy the numerosity requirement and granted a motion to strike class allegations.[81] The litigation continued as a non-class, with an appeal of that decision having to await final judgment. Romasanta, and other plaintiffs who had joined her, eventually agreed upon damages and executed a settlement agreement.[82] Based on the settlement agreement, the district court entered a judgment of dismissal.[83]

When McDonald, a stewardess who would have been a member of the putative class (*having been fired due to her marriage, but having not filed charges*) found out that the Romasanta plaintiffs were not going to appeal the class denial, she filed a motion to intervene so that she could

---

[79] *Id.* at 388.
[80] *McDonald*, 432 U.S. at 388.
[81] *Id.*
[82] *Id.* at 389.
[83] *Id.*

appeal the class denial decision.[84] She filed it eighteen days after final

judgment but still within the appeal window.[85] The district judge denied the

motion, reasoning:

> Well, in my judgment, gentlemen, this is five years now this
> has been in litigation, and this lady has not seen fit to come in
> here and seek any relief from this Court in any way during that
> period of time, and litigation must end. I must deny this
> motion. Of course, that is an appealable order itself, and if I
> am in error then the Court of Appeals can reverse me and we
> will grant a hearing, but in my judgment this is too late to
> come in.

> [*McDonald*, 432 U.S. at 390.]

But the appellate court disagreed, finding that the motion to intervene was

timely, despite not being filed until eighteen days after the final

judgment.[86] United successfully convinced the Supreme Court to grant

review.[87] However, the Supreme Court also found that McDonald's motion

to intervene was timely, noting that "[t]he critical fact here is that once the

entry of final judgment made the adverse class determination appealable,

the respondent quickly sought to enter the litigation."[88] That "critical fact"

---

[84] *Id.* at 390.
[85] *Id.*
[86] *McDonald*, 432 U.S. at 391.
[87] *Id.*
[88] *Id.* at 394.

24

favors the Intervenors in the present case. The sole reason why the Intervenors in the present case seek intervention is, like McDonald, to preserve the ability to appeal the denial of the damages class. And whereas McDonald's motion was timely because it was filed within the appeal window after final judgment, the Intervenors in this case have sought intervention even sooner, i.e., *before* final judgment.

And this reasoning in *McDonald* is fully applicable here: "since the named plaintiffs had attempted to take an interlocutory appeal from the order of denial at the time the order was entered, there was no reason for the respondent to suppose that they would not later take an appeal until she was advised to the contrary after the trial court had entered its final judgment."[89] Just as in *McDonald*, here the Class Representatives vigorously pursued an interlocutory appeal, argued that the district court abused its discretion, applied an erroneous view the law, and that absent a class for damages, millions of users would be left out in the cold.[90]

In other words, until the proposed settlement agreement was made known, there was no reason for the Intervenors in the present case to have

---

[89] *McDonald,* 432 U.S. at 393-94.
[90] RJN-7, 34, 66.

any reason to believe that the Class Representatives would decide to abandon a massively critical issue worth potentially billions of dollars of class-wide relief. Moreover, as the Supreme Court held:

> A rule requiring putative class members who seek only to appeal from an order denying class certification to move to intervene shortly after entry of that order would serve no purpose. Intervention at that time would only have made the respondent a superfluous spectator in the litigation for nearly three years, for the denial of class certification was not appealable until after final judgment. Moreover, such a rule would induce putative class members to file protective motions to intervene to guard against the possibility that the named representatives might not appeal from the adverse class determination. The result would be the very "multiplicity of activity which Rule 23 was designed to avoid.

[*McDonald*, 432 U.S. at 394, fn. 15 (cites omitted).]

The *McDonald* court concluded, "Here, the respondent filed her motion within the time period in which the named plaintiffs could have taken an appeal. We therefore conclude that the Court of Appeals was correct in ruling that the respondent's motion to intervene was timely filed and should have been granted."[91] Given that the Intervenors in the present case have sought intervention to appeal the denial of the damages class and have done so even before final judgment, this Court should follow *McDonald's* lead

---

[91] *McDonald*, 432 U.S. at 396.

and find the Intervenors' motion timely.

The district court abused its discretion in finding the Intervenors' motion untimely. The district court found the motion untimely because it was filed "on the eve of the hearing for final approval of the class settlement,"[92] i.e., *before final judgment*, and "well over a year since the Court denied certification of a damages class in this case."[93] This is abusive given that no less an authority than the Supreme Court has held that moving to intervene right after the class denial would "serve no purpose," and would result in an intervenor being a "superfluous spectator in litigation," potentially for years, and cause the "very multiplicity of activity which Rule 23 was designed to avoid."[94]

Later, in its ruling denying leave to file a motion for reconsideration, the district court again criticized the Intervenors' failure to "justify" waiting "nearly two years following class certification" before seeking intervention.[95] In light of Supreme Court precedence, and the lack of any warning that the Class Representatives would abandon their advocacy for a

---

[92] 1-ER-3, lines 11-12.
[93] 1-ER-3, lines 12-13.
[94] *McDonald*, 432 U.S. at 385, fn. 15.
[95] 2-ER-11, lines 8-9.

damages class, the district court is wrong in holding that Intervenors should have tried to intervene when the court denied the damages class. And its reliance upon this faulty view of the law, with respect to timeliness, amounts to an abuse of discretion.

It is a consistent position of this Court that seeking intervention before the expiration of a right to appeal (when preserving the right to appeal is the goal) is timely. Consider the rationale in the *McGough* decision:

> There was no improper delay by the government in bringing its motion to intervene. It sought to intervene to challenge, on appeal, the district court's dismissal of its claims against Industrial Indemnity. Even if the government had been a party to the action at the time the dismissal was entered, it would not have been able to appeal that dismissal order because it was not a final order. It did not dispose of all claims among all parties. *See* Fed.R.Civ.P. 54(b). Therefore, absent some circumstance permitting an interlocutory appeal, the earliest the government could have moved to intervene for purposes of taking an appeal from the dismissal order was after the judgment in the district court became final. It attempted to intervene at that time and filed its motion to intervene within the time a named plaintiff could have filed a notice of appeal.

[*U.S. ex rel. McGough,* 967 F.2d at 1395–96.]

Here, the Intervenors' motion to intervene to keep the right to appeal the denial of the damages class alive was timely -- as it was filed before there

28

was even a final judgment. Another holding by the Ninth Circuit is helpful

in this context:

> In analyzing timeliness, we are also mindful of the balance of
> policies underlying intervention. On the one hand, we
> discourage premature intervention that unnecessarily
> squanders scarce judicial resources and increases litigation
> costs. On the other hand, we favor intervention because it
> serves both efficient resolution of issues and broadened access
> to the courts. Accordingly, while we construe the intervention
> motions that we receive liberally, we do not require hasty
> intervention because timeliness is not a tool of retribution to
> punish the tardy would-be intervener, but rather a guard
> against prejudicing the original parties by the failure to apply
> sooner.
>
> [*Kalbers,* 22 F.4th at 823 (internal quotes and cites
> omitted).]

With this guidance in mind, the Intervenors acted appropriately in not

seeking intervention prior to the moment that the Class Representatives

announced their decision to abandon a pursuit of the damages class. The

district court's criticism about failure to act after its certification ruling is

abusive. Moreover, this Court should favor intervention and analyze the

timing of the motion liberally, especially because there is no legal prejudice

that could be said to have taken place during the short window from the

filing of the Settlement Agreement and the filing of the Motion to

Intervene.

**VIII.** **Given the dramatic change in circumstances, i.e., the sudden abandonment of the damages class issue, the district court abused its discretion by finding the motion to intervene untimely. The case of *Smith v. Los Angeles Unified School District* nicely lays out the standards.**

The case of *Smith v. Los Angeles Unified School District* provides a case study for the present matter. At the core of the *Smith* lawsuit was a fundamental disagreement as to the best way to educate disabled children, i.e., should they be integrated into classrooms or taught separately with a tailored curriculum.[96]

In 1993, a class action lawsuit was brought by a Chanda Smith against the Los Angeles Unified School District ("LAUSD"), seeking to bring LAUSD's special education program into compliance with federal law.[97] Three years later, in 1996, that lawsuit culminated in a Consent Decree.[98] Over the course of many years after 1996, there was additional litigation, tweaking of the Consent Decree, and other legal maneuvers.[99]

Commencing in October 2011, yet another round of negotiations between the parties and an independent monitor ensued, leading to a new

---

[96] *Smith,* 830 F.3d at 847.
[97] *Id.* at 848.
[98] *Id.*
[99] *Id.* at 848-49.

agreement in 2012 called: "Renegotiated Outcome 7," which involved a real push toward integration.[100] Integration brought new challenges and parents "discovered in Fall 2013 that the general education campuses to which their children (and over 500 other moderately to severely disabled children) were being transferred had not been adapted, through tangible construction alterations, to provide a safe and effective learning environment," often times resulting in injuries.[101] The discovery of this transfer of children to unsafe facilities took place in meetings in August 2013.[102] Between seventy and eighty days later, a group of parents moved to intervene as a matter of right. The district court denied both motions as untimely and the proposed intervenors appealed.[103]

This Court reasoned that: "It is true that Appellants seek to intervene in this action approximately twenty years after its commencement, and seventeen years after the adoption of the first Consent Decree. However, in analyzing the 'stage of the proceedings' factor, the mere lapse of time alone is not determinative. Where a change of circumstances occurs, and

---

[100] *Smith,* 830 F.3d at 850.
[101] *Id*, at 852.
[102] *Id.*, at 853.
[103] *Id.*

that change is the major reason for the motion to intervene, the stage of proceedings factor should be analyzed by reference to the change in circumstances, and not the commencement of the litigation."[104]

Of course, that is the way it must be. And it is one of the reasons why the Intervenors in this case are troubled with the district court criticizing the Intervenors for not seeking intervention after it denied the damages class (a year previously)[105] or for treating the motion as an eleventh-hour motion in a four-year-old case: "This case has been heavily litigated for over four years, and the Court will not prejudice the parties with further delay as it prepares to consider the proposed final settlement . . . the proposed settlement reflects years of hard work . . . permitting intervenors to freeload off of class counsel's years of hard work with an eleventh-hour motion raises fundamental fairness concerns."[106]

Intervenors had no reason to intervene when the court denied the damages class because the Class Representatives promptly pursued interlocutory appeal and were zealously representing the interests of the

---

[104] *Smith*, 830 F.3d at 854 (internal quotes and cites omitted)
[105] 1-ER-3, lines 12-13.
[106] 1-ER-4, lines 3-8.

class. For the same reason, Intervenors had no reason to seek intervention during the previous four years of litigation. It was only when the Class Representatives announced their intention to abandon the damages class issue that the nature of the representation changed and the litigation entered a new stage.

In *Smith*, this Court held that it was the adoption of Renegotiated Outcome 7 in 2012 that marked the commencement of a "new stage" and it was "critical" that the intervenors only sought entry to challenge that specific development -- "in other words, the most current stage of the *Chanda Smith* Litigation" and were "not seeking to reopen decades of litigation."[107] *Smith* further held that, "Thus, it was error to measure the timeliness of Appellants' motions by reference to stages of litigation pre-dating the change in circumstances that motivated Appellants' motion to intervene" and in "failing to analyze timeliness in light of the change in circumstances detailed above, the district court abused its discretion by failing to apply the correct legal rule."[108]

Here, the Intervenors are making the same argument. The preceding

---

[107] *Smith*, 830 F.3d at 856.
[108] *Id*.

four years of Google litigation are largely irrelevant to the timeliness

question. A significant change in representation and position took place

when the Class Representatives did a metaphorical 180-degree turn and

announced they were no longer planning on appealing the denial of a

damages class. The Intervenors then filed a motion to intervene well before

any hearing was scheduled by the district court to consider the approval of

the Settlement Agreement.

In reaching its decision in *Smith*, the Ninth Circuit relied upon a

previous circuit decision where the intervenors waited eight months to file

their motion and, yet, this Court found it timely:

> For the reasons already explained above, the district court
> erred to the extent it measured the length of Appellants' delay
> by reference to events pre-dating the time at which Proposed
> Intervenors were reasonably on notice that their interests were
> not being adequately represented—and certainly to the extent
> the court relied on events predating the change in
> circumstances that prompted Appellants' current motion to
> intervene. In *State of Oregon*, for example, the "changed
> circumstances" giving rise to the motion to intervene occurred
> "in 1982 when two of the Tribes gave notice of their intent to
> withdraw from the Plan or to renegotiate it." *State of Oregon*,
> 745 F.2d at 552. Yet the proposed intervenors did not file until
> late August 1983. *Id.* Despite at least an eight-month delay . . .
> we held that the "reason for and length of delay" factor
> weighed in *favor* of intervention. *Id.* Similarly here,
> Appellants moved to intervene approximately one year after
> the change in circumstances prompting their motion but, as
> discussed below, only weeks after definitively learning that

34

their interests were not adequately represented by the existing
parties.

> [*Smith,* 830 F.3d at 859–60, citing *State of Or.*, 745
> F.2d at 550.

Repeatedly, this Court has held that the mere passage of time is not enough

to find a motion to intervene untimely. Instead, it is a totality of the

circumstances test, and if the decision to intervene is caused by a change in

circumstances, the timing must be tied to that change and not from how

long the lawsuit has been litigated.[109]

Consider a fanciful discussion that highlights the issues at play here

and demonstrates the reasonableness of the Intervenors' timing in their

Motion to Intervene:

| | |
|---|---|
| **Potter:** | Just read an article that there is a settlement in the *Brown v. Google* case. |
| **Handy:** | Yeah, reading the settlement agreement now. Whoa. They are not going to appeal the denial of the damages class! |
| **Potter:** | What? That is one of the biggest issues in the case. Worth billions to the class members. They |

---

[109] *Smith,* 830 F.3d at 854.

aggressively pursued it before on interlocutory appeal. They said the judge was flat-out wrong!

**Handy:** Apparently, they changed their minds. The Class Reps are not losing out, though they have a nice payday coming. Their damages are being sent to confidential arbitration without having to prove liability. And Class Counsel is filing a hefty fee motion.

**Potter:** So, the absent class members are left out of that deal on damages?

**Handy:** Yup. But I did see mention of a tolling agreement. That might soften the blow.

**Potter:** See if you can get a copy. We should figure out if we need to intervene to protect absent class members. A bunch of them are our clients.

**Handy:** Hey, Potter, we have been trying to get a copy of the tolling agreement, but they say it is confidential and refuse to give it to us.

**Potter:** Well, we should not wait too much longer. When do we have to intervene?

**Handy:** The Supreme Court cases say that when you are intervening to preserve the opportunity to appeal, you are timely if you file after final judgment but before the appeal

window expires.

**Potter:** So, you think we should wait until then? Kind of makes sense because the court may not approve the settlement and there will then be no need to intervene.

**Handy:** Well, the Supreme Court says in the *McGough* case that "the earliest" we can move to intervene to preserve an appeal right is "after the judgment" becomes final. (967 F.2d at 1395–96) and in *McDonald*, the Supreme Court said that intervening before final judgment would just make us "a superfluous spectator" (432 U.S. at 394, fn. 15).

**Potter:** Ok, but we also need to force them to cough up a copy of the tolling agreement and make sure we have access to the stuff they are claiming is secret and confidential, etc. That will be important to the absent class members. I say we file now.

**Handy:** Ok, it may be early as we are more than a month before the hearing on the final approval, but that makes sense.

IX. **This Court's holding in *Kalbers* is instructive as it highlights that any prejudice identified by the court must be tied to the delay in seeking intervention. Here, there was no prejudice that took place due to any delay by Intervenors.**

On the issue of timeliness of an intervention motion, there are three

"primary factors" that this Court has identified: (1) the stage of proceedings, (2) prejudice to the other parties, and (3) the reason for and length of the delay.[110]

The Intervenors have discussed the stage of proceedings and reasons for their timing above, but the issue of "prejudice to other parties" also favors the Intervenors. Here, the Class Representatives filed the motion for approval of the Settlement Agreement on April 5, 2024[111] and the court set the hearing for August 7, 2024.[112] Other than briefing the amount of attorneys fees that Class Counsel hoped to be awarded, there were no significant developments in this case between April 5, 2024 and when the Intervenors filed the motion to intervene on July 2, 2024.[113]

This Court has held that "one key principle guides our prejudice analysis: The only prejudice that is relevant is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented. That is, prejudice must be connected in some way to the

_____

[110] *Kalbers*, 22 F.4th at 822.
[111] 3-ER-511 (entry 1086).
[112] 3-ER-512 (entry 1105).
[113] See, generally, 3-ER-511-513.

timing of the intervention motion—and the fact that including another party in the case might make resolution more difficult does not constitute prejudice."[114]

Here, the district court's analysis failed to conform to this rule. The only prejudice that the district court could identify was "further delays" and that the court did not want Intervenors to somehow "freeload off of class counsels' years of hard work . . . ."[115] But mere delay or additional complications are not a legitimate basis for denying intervention. This Court holds: "every motion to intervene will complicate or delay a case to some degree—three parties are more than two. That is not a sufficient reason to deny intervention . . . Delay is not alone decisive (otherwise *every* intervention motion would be denied out of hand because [of] the prospect of prolonging the litigation)."[116]

With respect to the question of timeliness, the prejudice issue is "the most important consideration in deciding whether a motion for intervention is untimely."[117] Here, the district court abused its discretion by identifying

---

[114] *Kalbers*, 22 F.4th at 825 (cites and quotes omitted).
[115] 1-ER-4, lines 4-8.
[116] *Kalbers*, 22 F.4th at 825 (cites and quotes omitted).
[117] *State of Or.*, 745 F.2d at 552 (internal cites and quotes omitted).

nothing more than mere and modest delay as the supposed prejudice.

**X.     The three-month delay from the time that the proposed settlement agreement was announced to the time the motion to intervene was filed was reasonable under the circumstances.**

The court held that the Intervenors *unfairly* sought to intervene at the eleventh-hour.[118] But it is the court's criticism that is unfair. The case was being prosecuted by Class Representatives—and diligently so—for 46 months before they filed a copy of the proposed Settlement Agreement, announcing for the first time their intent to waive the right to appeal the denial of the damages class. Had the motion to intervene been filed *the day after* the proposed agreement was published, it would have technically been in the eleventh hour also as the court framed it. Because the reason for seeking intervention did not materialize until the proposed settlement agreement, there was no reason and no basis to intervene before that. Nonetheless, the motion to intervene was filed within three months and the Intervenors were hardly inactive during that short window of time.

It was a big decision to seek intervention when the Class Representatives had stalwartly represented the class for almost four years.

---

[118] 1-ER-4, lines 7-8.

And reaching that decision required jumping through some reasonable hoops. First, there was no notice to the class. Second, there was even difficulty getting a full copy of the motion for approval of the settlement agreement. To this day, one cannot go to the ECF Docket and pull the proposed settlement agreement filed on April 1, 2024. It is restricted and unavailable to the public. (See Docket Entry 1097-4). Instead, one must find a redacted version attached to a declaration at docket entry 1098-3.

Moreover, the Class Representatives themselves argue that the redacted version of the Settlement Agreement interferes with a full evaluation of the Settlement Agreement: "regarding Google's request to remove the settlement agreement (Dkt. 1097-4) and replace it with a further redacted version (Dkt. 1098-3), Plaintiffs are most concerned regarding Google's request to redact information from page 8 regarding the number of data event records impacted by this settlement. There is nothing confidential or proprietary regarding that information, and the public is entitled to that information to evaluate the merits of the settlement."[119] Nonetheless, although the court never seemed to rule on the issue, it is the

---

[119] 2-ER-220, lines 3-7.

redacted version at docket entry 1098-3 that is available to the public and absent class members.

Moreover, in ascertaining how much damage the absent class members might suffer from the Class Representatives waiving the valuable right to appeal the denial of the damages class, the Intervenors needed to review the tolling agreement that class counsel had supposedly worked out. It was not unreasonable for Intervenors to request to evaluate that tolling agreement to see who was covered and what time period was covered. But the Intervenors' request for a copy was refused.[120] The Intervenors had to file their motion without a copy and only received a copy after filing the motion. The point here is that there was a struggle to get the necessary information to assess the necessity of intervention.

**XI.** **It is unfathomable that the district court could hold that absent intervention, there was not even a possibility, even "as a practical matter," that it would "impair or impede the movant's ability to protect its interest."**

Under Rule 24, the court must permit intervention if the intervenor "is so situated that disposing of the action may as a practical matter impair

---

[120] 2-ER-160-166.

or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[121]  Based on the record before the Court, the question is whether moving to final judgment and approving the class settlement (absent intervention) "as a practical matter" might impair or impede the movant's ability to protect its interests.  And if so, do the existing parties "adequately represent that interest?"

Here, the standard of review is de novo.  Nonetheless, the district court's reasoning is worth considering and, frankly, it seems nonsensical. The district court argued that the settlement only related to injunctive relief. "The proposed settlement relates to injunctive relief only, and the Court thus fails to see how the outcome of the hearing for final approval will impact, let alone impair or impede, would-be intervenors' interests as individual claims can be asserted, and in fact, many have."[122] But the settlement agreement does not *only* relate to injunctive relief. It explicitly waives the rights of the Class Representatives to appeal the denial of the Rule 23(b)(3) damages class. Absent someone intervening, it effectively precludes any pursuit of class-wide damages. And it is passingly strange

---

[121] Fed. R. Civ. P. 24(a).
[122] 1-ER-3, lines 17-20.

that the district court "fails to see" how this will impact absent-class-member—including the Intervenors'—rights.

There is a deep and developed body of case law surrounding the critical value and importance of class-action vehicles. Class treatment facilitates judicial economy by the avoidance of multiple suits on the same subject matter,[123] and it provides a feasible means for asserting the rights of those who "would have no realistic day in court if a class action were not available."[124] As one noted commentator concluded: "The class action is a powerful procedural device, offering enormous savings in time and judicial resources . . . ."[125]

In fact, the Class Representatives in the current case argued to this Court that class treatment for damages was of critical importance, arguing that the denial of certification for the damages class:

> sounds the "death knell" for many individual users' damages claims. Many of the (at least) "tens of millions" of users whom even Google concedes did not impliedly consent will probably never seek monetary relief for Google's breach of

---

[123] *American Pipe and Constr. Co. v. Utah,* 414 U.S. 538, 550, 94 S.Ct. 756, 764–65, 38 L.Ed.2d 713 (1974).

[124] *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809, 105 S.Ct. 2965, 2973, 86 L.Ed.2d 628 (1985).

[125] Richard L. Marcus & Edward F. Sherman, Complex Litigation 233 (1985).

> contract. This case has been extremely expensive to litigate,
> with the parties navigating a complex data process before a
> Special Master, and Plaintiffs overcoming Google's discovery
> misconduct, which resulted in sanctions. Most users do not
> have the means to overcome those barriers.

[RJN-66.]

If it is true—and the authorities are overwhelming—that there is a tangible value to the class vehicle and, correspondingly, a diminishment in value where that opportunity is lost, then losing the right to pursue class damages with others similarly situated is a real blow and meets the standard, i.e., that as a *practical* matter, it impairs or impedes the movant's ability to protect its interests.

And there is no question that the Class Representatives do not adequately represent these interests. They have been solved for their own clients in a sweetheart deal but left the others out in the cold.

The "relevant inquiry" is whether proceeding to final judgment *may* impair rights as a practical matter rather than whether it will "necessarily" impair them.[126] It is a low threshold of a showing: "Intervention of right does not require an absolute certainty that a party's interests will be

---

[126] *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 401 (9th Cir. 2002).

45

impaired."[127]

In attempting to harmonize the district court's holding on this issue (impairment and adequacy of representation) with the facts in the case, we must assume that the district court was working from an entrenched belief that there was no way a damages class could proceed anyway. But, as discussed in the two sections below, the *Calhoun* decision casts doubt on that entrenchment.

### A. An underlying reason for the district court's ruling on the motion to intervene was its belief that Google had a viable consent defense.

In other words, read in a light most charitable to the district court, the district court decision must have been premised on the court's belief that the interests of the class as a whole — including the interests of the Intervenors — would be served by the proposed Settlement Agreement in which the Class Representatives voluntarily relinquished their right to appeal the court's denial of the damages class.

But *that* ruling — the one that the Class Representatives were agreeing not to appeal — was based on the court's understanding of

_____

[127] *Citizens for Balanced Use,* 647 F.3d at 900.

46

Google's affirmative defense of consent.[128] Indeed, the court stated in its

order denying certification of the damages class that "consent remains the

central disputed issue in this case."[129] It denied certification because it

found "that individual issues of implied consent are likely to predominate

over any common issues."[130]

Essentially, the district court was ruling that the proposed settlement

did not harm Intervenors' interests *because* the settlement was reasonable

in light of the individualized questions raised by Google's consent defense.

When the court stated that "individual claims can be asserted," its

endorsement of that procedure was premised on its belief that class-wide

adjudication was impossible due to Google's consent defense.[131] And when

the court stated, "there is no indication that class counsel have acted in any

manner incompatible with movants' interests,"[132] it was expressing the

opinion that the Class Representatives were making the right choice by

relinquishing the right to pursue certification of a class that was nonviable

––––––––––––––––––––

[128] 3-ER-377-381.
[129] 3-ER-381, line 15.
[130] 3-ER-381, lines 18-19.
[131] 1-ER-3, lines 19-20.
[132] 1-ER-18-19.

in light of the individualized questions raised by Google's consent defense. Everything came back to the district court's analysis of Google's consent defense when it denied certification of the damages class. But this is not an inescapable legal conclusion.

>    **B.**    **The *Calhoun* decision establishes that Google has no viable consent defense, because consent is measured solely from the lay meaning of Google's disclosures.**

The consent defense that the court treated as viable in denying certification of a damages class does not appear to be viable after this Court's decision in *Calhoun*, demonstrating that the district court should have permitted intervention.

As in the present action, *Calhoun* is a suit brought by Google users who allege that the company surreptitiously collected their data in violation of contrary assurances in its privacy policy.[133] The difference between the two suits is which "mode" of Google's Chrome browser is at issue: *Calhoun* involves misrepresentations about the browser's "unsynced mode," while this case involves its "incognito mode."[134]

---

[133] *Calhoun*, 113 F.4th at 1143-44.
[134] *Id.* at 1150.

48

The *Calhoun* opinion calls the two cases (*Brown* & *Calhoun*) "related," and notes that they involve some of the same alleged misrepresentations.[135] In reversing Judge Rogers' decision to grant summary judgment in *Calhoun*, this Court narrowed the scope of Google's consent defense in ways that are inconsistent with the district court's analysis of the same defense in its ruling on the motion to certify a damages class in this case.

In the order denying certification of a damages class, the district court did not limit its analysis of Google's consent defense to the terms of Google's disclosures. Instead, it ruled that "[a] factfinder, in determining whether class members impliedly consented to the alleged conduct would have to determine the sources of information to which each class member was exposed."[136] The district court believed that consent could be based on *exogenous* technical information, such as "media and academic reports discussing the privacy limitations of private browsing mode" or "a developer tool that users can use to see, in real time, what data is being

---

[135] *Calhoun*, 113 F.4th at 1150.
[136] 3-ER-381, lines 8-10.

collected when users are browsing in private mode."[137]

The Ninth Circuit rejected this broad approach to consent in *Calhoun*. It clarified that consent depends on "the terms of the various disclosures" and "whether a reasonable user reading them would think that he or she was consenting to the data collection."[138]

This Court expressly repudiated any attempt to attribute knowledge to class members beyond what a layperson could glean from reading Google's disclosures.[139] As it explained: "Whether a 'reasonable' user of Google's computer software . . . consented to a particular data collection practice is not to be determined by attributing to that user the skill of an experienced business lawyer or someone who is able to easily ferret through a labyrinth of legal jargon to understand what he or she is consenting to."[140]

Therefore, the *Calhoun* opinion directly undercuts the district court's rationale for denying certification of a damages class. The district court ruled that individual questions predominated, because it thought that it

---

[137] 3-ER-380, lines 4-25.
[138] *Calhoun*, 113 F.4th at 1148.
[139] *Id.* at 1151.
[140] *Id.*

needed to look beyond the terms of Google's disclosures to conduct "individualized inquiries into the consent defense" based on each user's degree of technical knowledge.[141] *Calhoun* clarifies that the presence or absence of consent must be determined based solely on the lay meaning of the words in Google's disclosures. This obviates the need for the individualized inquiries that precluded certification of a damages class.

Simply put, the Intervenors met the low threshold of establishing that, as a practical matter, losing the right to appeal the denial of the damages class "may" impair its rights and urge this Court to find that to be the case.

## XII.   Conclusion

Intervenors respectfully request this Court reverse the district court's decision and permit intervention.

Dated: January 6, 2025                     POTTER HANDY LLP

By:  /s/ Russell Handy
Russell Handy, Esq.
Attorneys for Movant-Appellant

_____

[141] 3-ER-381.

51

## STATEMENT OF RELATED CASES
## FOR CASE NUMBER No. 24-5692

Pursuant to Ninth Circuit Rule 28-2.6, movant-appellant states that there are no related cases.

Dated: January 6, 2025         POTTER HANDY LLP

By:  /s/ Russell Handy    
Russell Handy, Esq.
Attorneys for Movant-Appellant

## CERTIFICATE OF COMPLIANCE
## FOR CASE NUMBER No. No. 24-5692

Pursuant to Fed. R. App. 32(a)(7)(C) and Ninth Circuit Rule 32-1, I

certify that the attached brief is proportionally spaced with a type face

equivalent to Times New Roman 14 points and contains 10,547 words.

Dated: January 6, 2025        POTTER HANDY LLP

By: _/s/ Russell Handy_____
Russell Handy, Esq.
Attorneys for Movant-Appellant